IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

MANUEL PONCE, *Plaintiff/Appellant,*

*v.*

PARKER FIRE DISTRICT, *Defendant/Appellee.*

No. 1 CA-CV 13-0038
FILED 3-27-2014

Appeal from the Superior Court in La Paz County
No. S1500CV201000165
The Honorable Randolph A. Bartlett, Judge

**REVERSED AND REMANDED**

COUNSEL

Offidani & Kresin, P.C., Phoenix
By Daniel R. Offidani

*Counsel for Plaintiff/Appellant*

Murphy, Schmitt, Hathaway & Wilson, P.L.L.C., Prescott
By Milton W. Hathaway, Jr.

*Counsel for Defendant/Appellee*

**OPINION**

Judge Jon W. Thompson delivered the Opinion of the Court, in which Judge Peter B. Swann and Chief Judge Diane M. Johnsen joined.

**T H O M P S O N,** Judge:

¶1        Plaintiff/appellant Manuel Ponce appeals from the trial court's decision granting summary judgment to defendant/appellee Parker Fire District (PFD), finding Ponce's notice of claim untimely and the complaint therefore barred by Arizona Revised Statutes (A.R.S.) section 12-821.01 (2003).   For the following reasons, we reverse and remand to the trial court.

## FACTUAL AND PROCEDURAL HISTORY

¶2        Ponce and Joyce Curren were next-door neighbors.   On August 16, 2009, a fire began on Curren's property.   The fire reached Ponce's property and damaged his garage.

¶3        After PFD suppressed the fire, Captains James Hall and Jeffery Rather conducted a visual inspection of the exterior of Ponce's home, and Hall entered the home to check for "hot spots."   Hall touched the walls and ceiling to feel for heat and, after the inspection, which lasted about five minutes, he did not believe there was risk of a subsequent fire. Later that day, Captain Robin Aspa used a thermal imaging camera on the exterior of Ponce's home to check for hot spots and saw no heat that caused alarm.   Aspa did not use the thermal imaging camera on the interior of Ponce's home.

¶4        On August 17, PFD successfully suppressed a small rekindle[1] at the Curren property.   Over the next few days, Fire Chief John Rather and Hall visited the property several times to check for rekindles.

¶5        On August 21, Ponce's home was almost completely destroyed by fire.   Experts subsequently concluded that the August 21 fire was most likely caused by embers from the August 16 fire that had traveled through openings created by firefighters in the fascia board into the attic of the Ponce home, where they became embedded in insulation and ignited days later.

¶6        On March 5, 2010, Ponce submitted a notice of claim to PFD. Ponce filed a complaint in Maricopa County against Curren on March 26. On August 12, 2010, he filed an amended complaint adding a claim of

---

[1]       A rekindle refers to a second fire caused by an ember from an earlier fire that reignites.

negligence against PFD for failing to fully extinguish the August 16 fire and allowing it to rekindle. In answering the complaint, PFD asserted as an affirmative defense that Ponce had failed to file a timely notice of claim.

¶7 On January 6, 2012, PFD filed a motion for summary judgment. PFD argued that the notice of claim was filed 196 days after the second fire and therefore was untimely under the 180-day limit imposed by A.R.S. § 12-821.01. PFD further argued that Ponce had not disclosed an expert witness on the standard of care for firefighters, noting that Curren's disclosed expert, Patrick Andler, was not qualified as an expert in firefighting procedures or procedures to prevent rekindles, called overhaul procedures. PFD argued that, without expert testimony, a jury could not determine that PFD had been negligent.

¶8 The court granted PFD's motion for summary judgment, ruling that Ponce's notice of claim was untimely pursuant to A.R.S. § 12-821.01. Ponce appealed. We have jurisdiction pursuant to A.R.S. § 12-2101(A)(1) (Supp. 2014).

## DISCUSSION

¶9 Summary judgment may be granted when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). In reviewing a motion for summary judgment, we determine de novo whether any genuine issues of material fact exist and whether the trial court properly applied the law. *Eller Media Co. v. City of Tucson*, 198 Ariz. 127, 130, ¶ 4, 7 P.3d 136, 139 (App. 2000). We view the facts and the inferences to be drawn from those facts in the light most favorable to the party against whom judgment was entered. *Scalia v. Green*, 229 Ariz. 100, 102, ¶ 6, 271 P.3d 479, 481 (App. 2011). We review legal issues de novo. *Corbett v. ManorCare of America, Inc.*, 213 Ariz. 618, 623, ¶ 10, 146 P.3d 1027, 1032 (App. 2006).

¶10 Ponce asserts that, even if his notice of claim was untimely, PFD waived its notice of claim defense by participating in the litigation for more than a year before moving for summary judgment on the issue. Ponce argues that PFD actively participated in disclosure, discovery, and ten depositions, including defending depositions of five firefighters concerning the suppression and overhaul efforts. PFD counters that it did not notice any of the depositions or initiate any discovery requests. The record shows that after PFD raised the notice of claim defense in its answer, it then successfully moved for the case to be transferred to La Paz

County from Maricopa County over the objection of both Curren and Ponce. Before filing a motion for summary judgment, PFD stipulated to the dismissal of another plaintiff and signed a joint pretrial statement. As discussed, in its motion for summary judgment, PFD both asserted the notice of claim defense and also argued substantively that the claim against it should be dismissed for want of expert testimony.

¶11 An assertion that a plaintiff did not comply with the notice of claim statute is an affirmative defense subject to waiver. *City of Phoenix v. Fields*, 219 Ariz. 568, 574, ¶ 27, 201 P.3d 529, 535 (2009). A defendant that has raised the defense in its answer may waive the defense by subsequent conduct. *Id.* at ¶¶ 28-29, citing *Jones v. Cochise County*, 218 Ariz. 372, 379-80, ¶¶ 22-23, 27, 187 P.3d 97, 104-05 (App. 2009) (finding waiver when the government entity substantially participates in litigation). The defense is waived when the government entity engages in substantial conduct to litigate the merits that would not have been necessary had the defendant not delayed in asserting the defense. *Fields*, 219 Ariz. at 575, ¶ 30, 201 P.3d at 536. Put differently, actively litigating issues unrelated to the notice of claim defense waives the defense. *County of La Paz v. Yakima Compost Co.*, 224 Ariz. 590, 597-98, ¶¶ 9, 11, 233 P.3d 1169, 1176-77 (App. 2010). A party asserting a notice of claim defense must seek prompt resolution of it. *Id.* at ¶ 11.

¶12 PFD argues that in anticipation of Ponce invoking the discovery rule to demonstrate the timeliness of his notice of claim, PFD needed to depose Ponce to establish his awareness of the fires; it contends it could not assert its notice of claim defense without this information. But after waiting to depose Ponce, PFD's motion argued simply that Ponce should have known that the second fire may have been related to the first merely because they occurred within a few days of each other. PFD did not require Ponce's deposition to make this argument; it could have moved for summary judgment under this theory at the commencement of litigation. Assuming for purposes of argument that Ponce's deposition was helpful to the argument PFD wanted to present on its notice of claim defense, PFD would not have waived the defense simply by participating in that one deposition. However, PFD actively litigated the merits of the case, making disclosures, participating in written discovery, filing a joint pretrial statement, moving for a change of venue, and participating in nine additional depositions, meaning it "substantially litigated issues . . . that were unrelated to the accrual issue." *La Paz*, 224 Ariz. at 597-98, ¶ 9, 233 P.3d at 1176-77. These actions all were unnecessary to PFD's notice of claim defense.

¶13        PFD also contends it needed the deposition testimony of Patrick Andler, Curren's expert witness, because PFD "decided to address the insufficiency of the evidence regarding negligence" in the same motion for summary judgment it intended to file on the notice of claim issue.  Promptly seeking judicial resolution of the notice of claim defense, as *Fields* requires, would not have precluded PFD from later moving for summary judgment on the merits or otherwise addressing the insufficiency of the evidence if the notice of claim defense failed.  Had a prompt motion to dismiss or for summary judgment on the notice of claim been successful, all the resources used to litigate the merits would not have been necessary.  Rather than seeking prompt resolution of its notice of claim defense, PFD elected to delay, and address the merits of the action.  We conclude that, as a matter of law, PFD waived its notice of claim defense by failing to seek prompt judicial resolution of that defense.

¶14        PFD further argues that regardless of the notice of claim defense, the grant of summary judgment should be affirmed on the ground that Ponce had not retained a qualified expert on firefighting techniques and so could not establish that PFD had been negligent.  Expert testimony is necessary to prove professional negligence when the matter at issue is not within the knowledge of the average layperson.  *Hunter Contracting Co. v. Superior Court*, 190 Ariz. 318, 320-21, 947 P.2d 892, 894-95 (App. 1997).

¶15        PFD argues that Andler was not qualified as an expert in firefighting or overhaul techniques or rekindled fires.  Ponce responds that he does not rely on Andler as his expert but relies on PFD Fire Chief John Rather and other PFD firefighters to establish the standard of care and its breach.  Ponce contends that PFD was negligent in failing to detect an ember that settled in insulation in his attic ceiling after the August 16 fire.  Specifically, Ponce asserts that PFD was negligent in not using thermal imaging equipment in the interior of his house after the August 16 fire.

¶16        Chief Rather testified that the standard operating procedure for thermal imaging cameras was to "[u]se it on everything that you can." The cameras can detect heat through a wall.  He further testified that the standard operating procedure for overhaul operations was to perform them "to the department's standard."  PFD used the thermal imaging camera on the exterior of Ponce's home only; inside the home, a firefighter checked for hotspots only by touching the walls and the ceilings, an examination lasting approximately five minutes.

¶17        PFD does not dispute that Rather is qualified to serve as an expert, but asserts that in other deposition testimony Rather stated that PFD followed department procedures.  PFD further points to Rather's affidavit dated over six months after his deposition in which he sought to clarify his deposition testimony and asserted that "Parker Fire District's firefighters properly handled the overhaul process and fully followed the District's overhaul procedures."

¶18        We must view the facts in the light most favorable to Ponce, the non-moving party. *Brookover v. Roberts Enters., Inc.*, 215 Ariz. 52, 55, ¶ 8, 156 P.3d 1157, 1160 (App. 2007).  It can be reasonably inferred from Rather's deposition testimony that, while PFD generally followed standard operating procedures in this case, the failure to use thermal imaging cameras inside Ponce's house did not comply with department procedures.  A competing inference that PFD complied with its own procedures and "properly handled the overhaul" can be drawn from Rather's other statements.

¶19        That a defendant shows it conducted itself in the usual way does not by itself prove that it met the standard of care. *Texas & Pacific Ry. Co. v. Behymer*, 189 U.S. 468, 470 (1903) ("What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not."); *see also The T.J. Hooper v. N. Barge Corp.*, 60 F.2d 737, 740 (2d Cir. 1932) ("[I]n most cases reasonable prudence is in fact common prudence; but strictly it is never its measure.").  However, when a defendant has departed from rules of its own making governing the conduct of its employees, a plaintiff may thereby demonstrate breach of an appropriate standard of care. *Thropp v. Bache Halsey Stuart Shields, Inc.*, 650 F.2d 817, 820 (6th Cir. 1980) ("When a defendant has disregarded rules that it has established to govern the conduct of its own employees, evidence of those rules may be used against the defendant to establish the correct standard of care."); *Babcock v. Chesapeake and Ohio Ry. Co.*, 404 N.E.2d 265, 275 (Ill. App. 1979) (holding defendant's rules, which constitute guidelines for the operation of its trains, can be used as evidence of defendant's standard of care); W. Page Keeton et al., *Prosser & Keeton on Torts* § 33, at 195-96 (5th ed. 1984).

¶20        It will be a question for the jury to determine whether PFD met the standard of care.  Viewing Rather's statements and the entire record in the light most favorable to Ponce, a question of fact exists regarding fire department standards in the use of the thermal imaging equipment.  Summary judgment is not appropriate on that ground.

## CONCLUSION

**¶21**        Because of our holding that PFD waived its notice of claim defense we need not address the timeliness of Ponce's notice of claim.  We further conclude that summary judgment is not appropriate on the ground that Ponce had not identified an expert on fire fighting procedures.  Ponce relies on the expertise of PFD Fire Chief John Rather, whose expertise PFD does not challenge, and Rather's statements regarding policies and standards at least raise a question of fact.  The superior court's grant of summary judgment is reversed and the matter remanded.



**Ruth A. Willingham · Clerk of the Court**
F I L E D : MJT